IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02491-CMA-CBS

STEVEN BARKSDALE,
        Plaintiff,
v.

GENIE CONNAGHAN,
PATRICIA PANEK, a.k.a PATRICIA RAE, and
AVALON CORRECTIONAL SERVICE, dba PHOENIX CENTER,
        Defendants.

---

RECOMMENDATION REGARDING PENDING MOTIONS

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on Defendant Avalon Correctional Service's

("Avalon") Motion to Quash Service (doc. #15), filed on January 1, 2011, and Defendant Genie

Connaghan's Motion to Dismiss (doc. #22), filed on February 14, 2011.  *Pro se* Plaintiff Steven

Barksdale filed his Response to [Defendant Connaghan's] Motion to Dismiss (doc. #36) and his

Response to Avalon Correctional Service's Motion to Quash (doc. #37) on May 15, 2011.

Defendant Avalon filed a Reply in Support of Motion to Quash (doc. #38) on May 31, 2011.

Pursuant to an order of reference (doc. #11), dated December 9, 2010, and the memoranda dated

January 5, 2011 (doc. #16) and February 15, 2011 (doc. #23), the subject motions were referred

to this Magistrate Judge.  I have carefully reviewed the pending motions and related briefing,

taken judicial notice of the entire file and considered the applicable case law

**FACTUAL BACKGROUND**

1

Mr. Barksdale initiated this lawsuit on October 13, 2010 while incarcerated at the Sterling, Colorado Correctional Facility.  In his *pro se* Complaint, Plaintiff asserted three claims for relief.  Mr. Barksdale alleged in Claims One and Two that he was subject to "Illegal Confinement and Unlawful Restraint" and "Violation of the 14th Amendment of Equal Protection and Due Process" after being charged with a Colorado Department of Corrections penal code violation for escape from the Adams County Community Correction Program at the Phoenix Center.  In his Third Claim, Plaintiff asserted that his constitutional rights were violated based upon a "Failure to Provide a Safe Environment."  The Third Claim contends that Mr. Barksdale left Phoenix Center after being subjected to threats and attempts of violence and receiving no assistance from his community parole officer and case manager.  The Complaint names as defendants Genie Connaghan, a community parole officer employed by the Colorado Department of Corrections, Patricia Panek,[1] a case manager at the Phoenix Center, and Avalon Correctional Services which was then the operator of the Phoenix Center.  On November 29, 2010, Mr. Barksdale's first two claims for relief were dismissed without prejudice as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See* Order to Dismiss in Part (doc. #6).

## ANALYSIS

A.      *Defendant Avalon Correctional Services' Motion to Quash Service*

In moving pursuant to Fed. R. Civ. P. 12(b)(5), Avalon Correctional Services asserts that it was never properly served with a Summons and Complaint in this action.  More specifically,

---

[1]As of the date of this Recommendation, Ms. Panek has not been properly served as she is no longer employed at Phoenix Center and no forwarding information was available to the United States Marshals Service.  *See* Unexecuted Process Receipt (doc. #14) dated December 27, 2010.

Avalon states (without contradiction from Plaintiff Barksdale) that it sold the Phoenix Center in

2008.  Although the Return of Service (doc. #14) completed by the United States Marshals

Service indicates that "Dave Emerson - Director" accepted service at the Phoenix Center on

December 14, 2010, Avalon Correctional Services insists that Mr. Emerson is not an employee

and not authorized to accept service on its behalf.  Plaintiff Barksdale responds that the

requirements of Fed. R. Civ. P. 4 must have been satisfied "based on the fact that service was

received and accepted."

"[S]ervice of process [under Fed. R. Civ. P. 4] provides the mechanism by which a court

having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the

person of the party served."  *Hukill v. Oklahoma Native American Domestic Violence Coalition*,

542 F.3d 794, 797 (10th Cir. 2008) (quoting *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d

940, 943 (10th Cir. 1992)).  Pursuant to Rule 12(b)(5), the court may dismiss a complaint for

insufficient service of process.  *See* 5B Fed. Prac. & Proc. Civ. 3d § 1353 (2008 Supp.) ("A Rule

12(b)(5) motion is the proper vehicle for challenging" the sufficiency of the service of process,

*i.e.*, "the mode of delivery or lack of delivery of the summons and complaint.").  Examples of

insufficient service include serving the wrong person or serving an individual not authorized to

accept service for a defendant.  "In opposing a motion to dismiss for insufficient service of

process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and

due process requirements so as to permit the court to exercise personal jurisdiction over

defendant."  *Fisher v. Lynch*, 531 F. Supp.2d 1253, 1260 (D. Kan. 2008).  "The parties may

submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is

entitled to the benefit of any factual doubt."  *Id.*

Rule 4(h) provides that in the absence of a waiver, a corporate defendant "must be served" either "in the manner prescribed by [Fed. R. Civ. P.] 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *See* Fed. R.Civ. P. 4(h).

As no waiver of service has been obtained from Avalon, Mr. Barksdale must demonstrate compliance with the service requirements of Fed.R.Civ.P. 4(h).  Here, it is undisputed that the United States Marshals Service attempted to effect service on Avalon Correctional Services by leaving the summons and complaint with an individual located at the address provided by Mr. Barksdale.  It now appears the individual who accept the summons and complaint was not an Avalon employee and not authorized to accept service on behalf of Avalon.  Under the circumstances, that attempted service does not satisfy the requirements set forth in Rule 4(h).  *Cf. Hearron v. Premier Manufacturing Support Services, Inc.*, 2010 WL 4921789, at *1 (D. Kan. 2010) (held that service under Rule 4(h) was not properly effected where the United States Marshal served an individual who had no affiliation with the defendant).[2]  *See also Lab Crafters, Inc. v. Flow Safe, Inc.*, 233 F.R.D. 282, 284 (E.D.N.Y. 2005) (holding that service on an individual unaffiliated with the defendants was not effective for purposes of Rule 4); *Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Construction, Inc.*, 2003 WL 22052872, at *4 (S.D.N.Y. 2003) (holding that "[a] person who is unknown to any of the employees at the corporate office cannot be sufficiently 'integrated' with [the defendant corporation] to have the authority to receive service"); *The American Institute of Certified Public*

---

[2]Copies of unpublished decisions cited herein are attached to this Recommendation.

4

*Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998) (service was ineffective on the defendant corporation where the individual who accepted service was not employed by the defendant corporation or authorized to accept service on behalf of the defendant).

> Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent part
>
> [i]f a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The 120-day period to effect service upon Avalon Correctional Services expired no later than January 31, 2011, 120 days after the Complaint was filed on October 13, 2010.  Rule 4(m) does not specifically define "good cause."  The Advisory Committee Notes to Rule 4 provide examples of grounds sufficient to relieve a plaintiff from the consequences of Rule 4(m), such as "to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition."  Notes of Advisory Committee on Rules, 1993 Amendments to Fed.R.Civ.P. 4(m).  Whether the plaintiff establishes good cause for failure to timely serve a summons and complaint is a discretionary determination entrusted to the court.  The plaintiff bears the burden of showing good cause.  *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985) (Rule 4 "plainly places the burden on the plaintiff to show good cause") (citations omitted).

In this instance, the United States Marshals Service was directed to effect service pursuant to the district judge's Order Granting Service by United States Marshal (doc. #8). Plaintiff cannot plausibly suggest that the failure to properly serve Avalon can be attributed to

some error or omission on the part of the United States Marshals Service. The United States Marshal delivered the summons and complaint to the address Plaintiff provided for Avalon Correctional Services. *Cf. Kiley v. Kurtz*, 533 F. Supp. 465, 467 (D. Colo. 1982) (holding that the Marshals' only duty is to execute service in the requested manner, not to determine whether the requested service will be effective). *Compare Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1243 (N.D. Cal. 2008) (denied defendant's motion to dismiss based on ineffective service where there was no basis for suspecting there were any defects in the information plaintiff provided with respect to the defendant's name and address).

While Rule 12(b)(5) permits dismissal of an action for improper service of process, that remedy is not absolutely required. The technical requirements of Rule 4 should be construed liberally in those cases where the defendant had actual notice of the pending suit. In such cases, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D. N.C. 2003). *Cf. Miree v. United States*, 490 F. Supp. 768, 776 (N.D. Ga. 1980) (a case should not be dismissed for insufficient service unless the defendant has been seriously prejudiced by the mistake or by the delay in correcting it). This court has broad discretion to retain the case, but to quash the defective service, particularly where "there is a reasonable prospect that plaintiff will ultimately be able to serve defendant[s] properly." *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. 1453, 1459 (S.D. Ind. 1988) (quoting 5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 586 (2d ed. 1987)). *Cf. Plant Genetic Systems, N.V. v. CIBA Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996) (noting that dismissal under Rule 12(b)(5) is not justified in a case where it appears service may be properly effected). Dismissal in such a case "would be without prejudice

6

and would probably lead to the reinstitution of the suit . . . [thereby] needlessly burden[ing] [the plaintiff] with additional expense and delay [while] postpon[ing] the adjudication of the controversy's merits."   *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. at 1459.   Under the particular circumstances of this case, I recommend that Defendant Avalon's Motion to Quash Service be granted, but that the district court retain jurisdiction and grant Mr. Barksdale leave to re-serve Avalon Correctional Services by providing the United States Marshals Service with a proper address for the corporate entity.

B.      *Defendant Connaghan's Motion to Dismiss*

        Mr. Barksdale's Third Claim for Relief, the only claim remaining in this action, asserts an Eighth Amendment violation based upon the defendants' alleged failure to provide a safe environment and their failure to respond properly to "threats and attempts of violence" that Plaintiff purportedly received while at the Phoenix Center.   Defendant Connaghan has moved to dismiss the Complaint on several grounds pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

        Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter.   Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.   A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.   A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction.   The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.   Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, 2008 WL 4277748, at *3 (D. Colo. 2008) (internal quotation marks and citations omitted).

        Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under

Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view

these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 2010 WL

437335, *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to

state a claim to relief that is plausible on its face."[3]  *Id.*  As the Tenth Circuit explained in *Ridge

at Red Hawk, L.L.C. v. Schneider*, "the mere metaphysical possibility that *some* plaintiff could

prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give

the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims."  493 F.3d 1174, 1177 (10th Cir. 2007).  "The burden is on the plaintiff

to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is

entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell

Atlantic Corp.*, 555 U.S. at 556).  A complaint must set forth sufficient facts to elevate a claim

above the level of mere speculation.  *Id.*

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence
> that the parties might present at trial, but to assess whether the plaintiff's
> complaint alone is legally sufficient to state a claim for which relief may be
> granted. . . . However, where the well-pleaded facts do not permit the court to
> infer more than the mere possibility of misconduct, the complaint has alleged-but

---

[3]Documents attached to the complaint as exhibits are part of the complaint and may be considered by the court when evaluating a Rule 12(b)(6) motion to dismiss.  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

it has not shown-that the pleader is entitled to relief.

*Jordan-Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, 2009 WL 2924777, at *2 (D. Colo. 2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).[4]

    1.    <u>Liability Based Upon Defendant's Official Capacity</u>

To the extent that Mr. Barksdale is suing Defendant Connaghan in her official capacity, he is in reality attempting to impose liability on Defendant's employer, the Colorado Department of Corrections.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988).  A suit against a state official in his or her official capacity is treated as a suit against the state.  *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991).  Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  Eleventh Amendment immunity extends to the states themselves and to those governmental entities that are "arms of the state." *Ambus v. Granite Board of Education*, 995 F.2d at 994.  States, state officials sued in their official capacities, and governmental entities that are considered "arms of the state" are not "persons" within the meaning of 42 U.S.C. § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  Such entities cannot be sued for monetary damages arising from alleged

---

[4]It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).

conduct which deprives a plaintiff of his or her civil liberties.  The Colorado Department of

Corrections is an arm of the state and thus is entitled to Eleventh Amendment immunity.  If the

Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to

liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  All claims against Defendant Connaghan in

her official capacity must be dismissed.

      2.    <u>Physical Injury</u>

It is well-established that in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff

must prove not only a constitutional violation, but also demonstrate that the constitutional

deprivation caused him some actual injury.  *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d

Cir. 1993).  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, has heightened this

requirement by barring a prisoner from bringing a civil action "for mental or emotional injury

suffered while in custody without a prior showing of physical injury."  *See* 42 U.S.C. § 1997e(a)

and (e).[5]

Mr. Barksdale alleges that he placed Defendant Connaghan on notice that he was "having

issues with the threats and attempts of violence on his life."  *See* Complaint, at p. 6.  Plaintiff

further avers that Defendant Connaghan's failure to "correct the problem" "put undue mental and

physical stress on the plaintiff rendering him to feel helpless" and giving Plaintiff no option

"except to leave" the Phoenix Center.  *Id.*  A careful reading of the Complaint finds no allegation

of  "physical injuries."

---

[5]While the PRLA requires "physical injury," the threshold may not be particularly high.
*Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PRLA requirement
should be construed consistent with the "well-established Eighth Amendment standard," and
must be more than *de minimis,* but need not be significant)

"[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999)). *See also Flanery v. Wagner*, 182 F.3d 931, *2 (10th Cir. 1999) (Table) (holding that the trial court properly granted summary judgment as to plaintiff's claim for compensatory damages where plaintiff failed to show that he suffered physical injuries as a result of defendant's alleged conduct). For example, where inmates have alleged that defendants were deliberately indifferent to their safety or welfare, or inflicted emotional injury by depriving them of basic necessities of life, courts have applied § 1997e(e) to restrict the availability of judicial remedies if there is no showing of physical injury. *See, e.g., Mason v. Schriro*, 45 F. Supp. 2d 709, 716 (W.D. Mo. 1999) ("a review of cases from other courts indicates that [§ 1997e(e)] is most frequently applied where plaintiff alleges that defendants' actions have caused him to fear physical injury and fear for his safety and welfare, but he fails to show any physical injury"), *disagreed with on other grounds by Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 1999). Moreover, "a number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Department of Corrections*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009).

Quite simply, the Complaint contains no factual allegations that would demonstrate or even infer that Mr. Barksdale suffered physical injury caused by conduct attributable to the defendants. This omission is fatal to Plaintiff's claim for compensatory damages. Nevertheless, Mr. Barksdale would not be precluded from recovering nominal or punitive damages should he

prevail on the merits.  *See, e.g., Wares v. Van Bebber*, 391 F. Supp. 2d 1237, 1253 (D. Kan. 2005).

     3.    <u>Qualified Immunity</u>

     Defendant Connaghan has raised the defense of qualified immunity as to any claims asserted against her.  Under the doctrine of qualified immunity, government officials are immune from civil damages liability for constitutional torts as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Qualified immunity protects defendants not only from liability, but also from suit.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Such immunity is qualified in that it does not obtain when otherwise immune officials violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)).  Whether Defendant Connaghan is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 552 U.S. 1181 (2008).

     This court must review Defendant's claim of qualified immunity "under the customary motion to dismiss standard."  *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.*  However, the court is also mindful of the United States Supreme Court's admonition that a ruling on the issue of qualified immunity should be made at the earliest possible stage of the proceeding in order to preserve the protections of the privilege.  *See Saucier v. Katz*, 533 U.S.

194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right. Second, . . .
> the court must decide whether the right at issue was clearly established at the time
> of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted). In determining whether a right is clearly established, the relevant inquiry

is "whether it would be clear to a [reasonable government official] that his conduct was unlawful

in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 202. "A reviewing court may

exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.

"Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id*.

The plaintiff bears the burden of showing with particularity facts and law establishing the

inference that the defendant violated a clearly established federal constitutional or statutory right.

*Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The defense of qualified immunity also implicates the pleading requirements of Fed. R.

Civ. P. 8(a). *Robbins v. Oklahoma,* 519 F.3d at 1248. Qualified immunity insures that public

officials are not subjected to "'broad-ranging discovery' that can be peculiarly disruptive of

effective government." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

> Although we apply "the same standard in evaluating dismissal in qualified
> immunity cases as to dismissals generally," complaints in § 1983 cases against
> individual government actors pose a greater likelihood of failures in notice and
> plausibility because they typically involve complex claims against multiple
> defendants. . . . Without allegations sufficient to make clear the "grounds" on
> which the plaintiff is entitled to relief, it would be impossible for the court to
> perform its function of determining, at an early stage in the litigation, whether the

asserted claim is clearly established.

*Robbins v. Oklahoma,* 519 F.3d at 1249.  The court will proceed to apply these standards to the remaining claims asserted in this case.

    4.    <u>Eighth Amendment</u>

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments."  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 23 (1994) (internal quotation marks and citation omitted).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.  Where an Eighth Amendment claim is based on conditions of confinement, an inmate must satisfy a two-prong test:  (1) that the deprivation suffered was "objectively 'sufficiently serious,'" and (2) the defendant had a "sufficiently culpable state of mind" or was "deliberately indifferent" to the inmate's health or safety.  *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).  *See also Allen v. Zavaras*, 2011 WL 2794075, at *2 (10th Cir. 2011).

The objective component of the Eighth Amendment test requires Mr. Barksdale to show he was "incarcerated under conditions posing a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S. at 834.  This includes "official conduct that 'is sure or very likely to cause' serious injury at the hands of other inmates."  *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (internal quotation marks and citation omitted).

14

To satisfy the subjective component of the Eighth Amendment test, Mr. Barksdale must allege facts to show Defendant Connaghan had the culpable state of mind known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. at 834. Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* at 1496. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 US. at 847. "To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (internal quotations marks and citation omitted).

The threat of assault that Mr. Barksdale alleges does not, standing alone, constitute cruel and unusual punishment. The Eighth Amendment reaches conduct that "is sure or very likely to cause serious injury at the hands of other inmates." *Benefield v. McDowall*, 241 F.3d at 1272 (internal quotation marks and citation omitted). However, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). *See also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (holding that "threats" or "verbal taunts" alone "do not violate the Eighth Amendment"); *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (allegations that the plaintiff was constantly in fear of his life by physical assaults from other inmates who

15

may discover his crime as a sex offender at any time failed to state an Eighth Amendment claim for alleged failure to protect the plaintiff's safety); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (the mere threat of future bodily harm to a prisoner may not provide a basis for a cognizable Eighth Amendment claim).[6]

Although the Third Claim for Relief refers to "attempts of violence on [Plaintiff's] life" and "attempts of serious bodily injury or death," that allegation is notable for the information that is not provided. The Complaint does not identify the source of any threats or the individuals who supposedly attempted to cause harm to Mr. Barksdale. Plaintiff does not indicate when or how these threats or attempts were made, and whether the attempts were isolated, separate events or involved a pattern of conduct by a specific perpetrator. Mr. Barksdale does not state what precipitated the threats or attempts. Plaintiff has not alleged any specific physical injury actually sustained as a result of these unspecified threats or attempts. *Mimms v. U.N.I.C.O.R..*, 386 Fed. Appx. 32, 35 (3rd Cir. 2010) (holding that plaintiff's "failure to protect" claim was properly dismissed where the plaintiff offered only conclusory allegations that did not present a situation where the plaintiff's health or life were at risk).

In short, Mr. Barksdale has not come forward with any facts to show he was incarcerated under conditions posing a substantial risk of serious harm. *See Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) ("Prisoner officials are not . . . expected to prevent all inmate-on-inmate violence."). Indeed, the Complaint only alludes to "mental and physical stress." *Cf. Walker v.*

---

[6]*But see Skinner v. Uphoff*, 234 F. Supp. 2d. 1208, 1214 (D. Wy. 2002) (an official would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist).

*Shaw*, 2010 WL 2541711, at *9 (S.D.N.Y. 2010) (noting that "[t]he fear of assault, when unaccompanied by specific threats or imminent harm, is 'not the kind of extreme and officially sanctioned psychological harm that supports a claim of damages under the Eighth Amendment"). *Compare Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (holding that vague information or a generalized claim of "having problems" in the jail block were not sufficient to place correctional officers on notice of a specific threat to the plaintiff's safety) and *Imboden v. Hornbeak*, 2010 WL 3033909, at *5 (E.D. Cal. 2010) (held that the plaintiff alleged a cognizable Eighth Amendment claim where the plaintiff identified specific potential assailants and the defendant was aware those individuals were violent toward other inmates and specifically aware of incidents in which those prisoners had attacked their roommates), *Report and Recommendation rejected on other grounds*, 2011 WL 590457 (E.D. Cal. Feb 10, 2011).

Quite simply, Mr. Barksdale has failed to allege sufficient facts to satisfy either the objective or subjective elements of an Eighth Amendment claim.  When viewed in a light most favorable to Plaintiff, the generalizations set forth in the Third Claim for Relief do not permit the court to infer more than the mere possibility of misconduct.  While the court cannot discount the possibility that Mr. Barksdale could assert a proper claim under the Eighth Amendment, the current Complaint is both factually and legally deficient under Rule 12(b)(6).

5.    Retaliation

Although his Third Claim for Relief is styled "Failure to Provide a Safe Environment," Mr. Barksdale also claims that he was subjected to "retaliatory action because he complained to [Defendant Connaghan] and [she] failed to act upon complaints."  Mr. Barksdale alleges that he "had no choice except to leave" the Phoenix Center when it became apparent that Defendant

Connaghan would not take action to address the "imminent threat and attempts of serious bodily injury or death" he was reporting.  Plaintiff further claims that Defendant Connaghan filed "penal and criminal charges against the plaintiff" in an effort to "cover [her] disregard for [her] client['s] well being and safety as well as [her] incompetence to perform violated [her] job in a professional manner."  Plaintiff attached to his Complaint a document indicating that Defendant Connaghan made the determination to place Mr. Barksdale "on escape status" after he failed to return to the Phoenix Center as required.  Mr. Barksdale challenges the factual underpinnings for the escape charge.

It is well-established that prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted).  *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) (noting that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out"); *Duncan v. Magelssen*, 2009 WL 712387, *6 (D. Colo. 2009) ("It is well settled that prisoners' filing of grievances is activity protected by the First Amendment").

To allege a First Amendment retaliation claim, "[a] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson* v. *Shanks*, 149 F.3d at 1144 (internal quotation marks and citation omitted).  Retaliation claims in a prison context are viewed with "skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"

*Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1006).  Therefore, "[a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Id.* at 1144 (internal quotation marks and citation omitted).  "It is imperative that [a] plaintiff's pleading be factual and not conclusory."  *McKeighan v. Corrections Corp. of America*, 2010 WL 3913227, at *12 (D. Kan. 2010).  *Cf. Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (a prisoner's retaliation claims must be based on "more than his personal belief that he is the victim of retaliation").

Construing the Complaint in a light most favorable to the non-moving party, Mr. Barksdale alleges that he informed Ms. Connaghan of threats and attempted harm directed against his person, and asked for her assistance in addressing the situation.  For purposes of the pending motion, I will treat that as conduct protected by the First Amendment.  Mr. Barksdale further alleges that he was subjected to adverse action in the form of penal and criminal charges stemming from his decision to leave the Phoenix Center in an effort to avoid this threatened harm.  Finally, Mr. Barksdale has attached to his Complaint documentation that he suggests refutes the factual basis for Defendant Connaghan's escape allegation.  If the escape allegation is unfounded, that might plausibly suggest an improper or ulterior motive on the part of Ms. Connaghan.  While this court expresses no opinions as to the ultimate merits of Mr. Barksdale's retaliation claim, on the present record I cannot conclude that Mr. Barksdale's claim is implausible on its face.  I also find that Plaintiff has alleged sufficient facts to survive a Rule 12(b)(6) challenged based on the defense of qualified immunity.

**CONCLUSION**

Accordingly, for the foregoing reasons, this court RECOMMENDS:

1.      That Defendant Avalon Correctional Services Motion to Quash Service (doc. # 15) be GRANTED, but that the district court retain jurisdiction and grant Plaintiff leave to effect proper service on this defendant pursuant to Fed. R. Civ. P. 4(h).

2.      That Defendant Connaghan's Motion to Dismiss (doc. #22) be GRANTED with respect to Plaintiff Barksdale's claim against Defendant Connaghan in her official capacity, and his claim for compensatory damages. Those discrete claims should be dismissed as those legal deficiencies could not be cured through amendment of the Complaint. *Cf. Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001). I further RECOMMEND that Plaintiff Barksdale's Eighth Amendment claim against Defendant Connaghan be dismissed without prejudice, allowing Plaintiff leave to amend his Third Claim for Relief. Finally, I RECOMMEND that Defendant Connaghan's Motion to Dismiss be denied as to Plaintiff Barksdale's claim for retaliation.

**Advisement to the Parties**

Within fourteen days after service of a copy of a Magistrate Judge's order, a party may serve and file written objections to the order. Fed. R. Civ. P. 72(a). "A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). *See also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). Failure to make timely objections to the Magistrate Judge's order(s) may bar review by the District Judge and will result in a waiver

of the right to appeal.  *See Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) ("We have

adopted a firm waiver rule when a party fails to object to the findings and recommendations of

the magistrate.  The failure to timely object to a magistrate's recommendations waives appellate

review of both factual and legal questions.") (quotations, citation, and brackets omitted);

*Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("[p]roperly filed objections resolved by

the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. §

636(b)(1)(A)").

    DATED this 28th day of July, 2011.

                        BY THE COURT:


                         s/Craig B. Shaffer
                        United States Magistrate Judge