IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02491-CMA-CBS

STEVEN BARKSDALE,
    Plaintiff,
v.

GENIE CONNAGHAN, and
PATRICIA PANEK, a.k.a PATRICIA RAE,
    Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Shaffer

    This civil action comes before the court on Defendant Connaghan's Motion for Summary Judgment filed on July 13, 2012 (Doc. # 52). Pursuant to the Order Referring Case dated December 9, 2010 (Doc. # 11) and the memorandum dated September 21, 2012 (Doc. # 54), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Barksdale's Response (filed October 22, 2012) (Doc. # 56), the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Mr. Barksdale commenced this lawsuit in his *pro se* capacity on October 13, 2010, while he was incarcerated at the Sterling Correctional Facility ("SCF") in Sterling, Colorado. Mr. Barksdale was paroled in December 2010 and currently resides in Wichita, Kansas. (*See* Change of Address (Doc. # 12)). Mr. Barksdale initially asserted three claims for relief. In Claims One and Two, he alleged that he was subjected to "Illegal Confinement and Unlawful Restraint" and "Violation of the 14th Amendment of Equal Protection and Due Process" after being charged with a Colorado Department of Corrections ("CDOC") penal code violation for

1

escape from the Adams County Community Correction Program operated by Avalon Correction Services d/b/a Phoenix Center. (*See* "Prisoner Complaint" (Doc. # 3)). In Claim Three, Mr. Barksdale alleged that Defendant Connaghan, a parole officer employed at Phoenix Center, violated his constitutional rights based upon "Failure to Provide a Safe Environment." (*See id.*). On November 29, 2010, District Judge Brimmer dismissed Claims One and Two without prejudice as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 6)). On August 18, 2011, District Judge Arguello agreed with the Magistrate Judge's Recommendation that Mr. Barksdale's Eighth Amendment claim and claim for compensatory damages against Defendant Connaghan in her official capacity be dismissed. (*See* "Order Adopting and Affirming July 28, 2011 Recommendation of United States Magistrate Judge" (Doc. # 40); "Recommendation Regarding Pending Motions" (Doc. # 39) at 17-19 of 21). Judge Arguello also agreed that Claim Three stated a claim against Defendant Connaghan only in her individual capacity for retaliation based on protected First Amendment activity and that Mr. Barksdale's damages are limited to nominal and punitive damages. (*See id.*).

II.     Statement of Undisputed Facts

During the time period relevant to the allegations contained in the Complaint, Mr. Barksdale resided at the Phoenix Center as a result of a parole violation. (*See* Doc # 3 at 2-7 of 7; Department of Corrections Notice of Charge(s), Exhibit A to Defendant's Motion (Doc. # 52-1)). Mr. Barksdale was supervised by Community Parole Officer Connaghan. (*See id.*). On October 17, 2007 at approximately 7:30 a.m., Mr. Barksdale was granted permission to leave the Phoenix Center for the purpose of a job search with a return time of 4:00 p.m. the same day. (*See* Doc. # 52-1). After Mr. Barksdale failed to return to the Phoenix Center on October

17, 2007, he was placed on escape status and escape procedures were initiated. (*See* "Adams Community Corrections Program – Department of Corrections Escape Report," Adams Community Corrections Program Phoenix Center Failed to Return form, "Inmate (DOC) Escape Procedure," "Jail and Hospital Escape Form," Exhibits B, C, D, E to Defendant's Motion (Docs. # 52-2, # 52-3, # 52-4, # 52-5)).

More than two years later, on January 7, 2010, Mr. Barksdale was arrested in Colby Kansas. (*See* Doc. # 52-1). Upon his return to Colorado, on January 29, 2010, Mr. Barksdale was served with a Notice of Charge(s) alleging a class 1 Rule 6 violation of the CDOC Code of Penal Discipline (COPD) for Escape Without Force. (*See* Doc. # 52-1). A hearing was held on February 2, 2010 and Mr. Barksdale was found guilty of the COPD violation. (*See* Disposition of Charge(s), Exhibit G to Defendant's Motion (Doc. # 52-7)). Mr. Barksdale appealed his COPD conviction through the CDOC's administrative process. (*See* Offender Appeal Form, Exhibit H to Defendant's Motion (Doc. # 52-8)). His conviction was reversed because the audio recording "of the actual COPD hearing was not retained and could not be located." (*See id.*; Expungement Order, Exhibit I to Defendant's Motion (Doc. # 52-9)). Mr. Barksdale was also charged in Adams County District Court with Escape. (*See* Mittimus, Exhibit F to Defendant's Motion (Doc. # 52-6)). On February 2, 2010, in Adams County Criminal Case No. 07CR3334, Mr. Barksdale pled guilty to a charge of attempt to escape. (*See* Doc. # 52-6).

On August 4, 2010, approximately six months after he returned to custody in Colorado, and almost three years after he escaped from the Phoenix Center, Mr. Barksdale filed a Step 1 grievance complaining that Defendant Connaghan failed to provide him with a safe environment at the Phoenix Center. (*See* Grievance No. SF10/11-0155-1, Exhibit J to Defendant's Motion (Doc. # 52-10)). On August 31, 2010, Community Parole Supervisor Lorraine Diaz de Leon responded to and denied Mr. Barksdale's Grievance. (*See* Exhibit K to Defendant's Motion

3

(Doc. # 52-11)). On September 10, 2010, Mr. Barksdale filed a Step 2 Grievance, which was also denied. (*See* Exhibit L to Defendant's Motion (Doc. # 52-12). Mr. Barksdale filed a Step 3 Grievance on September 27, 2010. (*See* Exhibit M to Defendant's Motion (Doc. # 52-13)). Mr. Barksdale signed his Complaint in this case two days later, on September 29, 2010. (*See* Doc. # 3 at 9 of 11). His Step 3 Grievance was timely denied within 45 days, on December 2, 2010. (*See* Exhibit N to Defendant's Motion (Doc. # 52-14)).

III.   Standard of Review

Defendant Connaghan moves pursuant to Fed. R. Civ. P. 56 for summary judgment on the claim remaining in the Complaint on the basis that she is entitled to qualified immunity in her individual capacity. "[Q]ualified immunity is an affirmative defense to a section 1983 action . . . ." *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). Under certain circumstances, the affirmative defense of qualified immunity shields public officials from individual liability in actions brought under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted). The court examines "the record to determine whether any genuine issue of material fact [is] in dispute." *Id.* The court must examine "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Id.* "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (internal quotation marks and citation omitted). "[A]n issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), *implied overruling on other grounds by National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "[W]here the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock*, 218 F.3d at 1209.

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotation marks and citations omitted). "When the defense of qualified immunity is raised in a summary judgment motion, we apply special rules to determine whether the motion was properly granted or denied." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted). *See also Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009) (court's review of summary judgment "in the qualified immunity context differs from that applicable to review of other summary judgment decisions."). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff," who must meet a two-part test before the defendant will bear the traditional burden of a movant for summary judgment under Fed. R. Civ. P. 56(c). *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted).

Specifically, [t]he plaintiff initially bears a heavy two-part burden [and] must show

>(1) that the defendant's actions violated a constitutional . . . right, and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue. Unless the plaintiff carries its twofold burden, the defendant prevails.

*Reynolds*, 370 F.3d at 1030 (internal quotation marks and citations omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). *See also Herrera*, 589 F.3d at 1070 ("Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry) (internal quotation marks and citation omitted). The court "may address these questions in whatever order is appropriate under the circumstances." *Toevs*, 646 F.3d at 755. *See also Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) ("A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") (internal quotation marks and citation omitted).

The court must "view the facts in the light most favorable to the plaintiff." *Toevs*, 646 F.3d at 755. Nevertheless, "a plaintiff's version of the facts must find support in the record." *Thomson*, 584 F.3d at 1312. As the Complaint has been sworn to under penalty of perjury (*see* Doc. # 3 at 9 of 11), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's

6

burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).  The court must determine whether Mr. Barksdale has met his burden of presenting specific facts to overcome Defendant Connaghan's Motion.

IV.    Analysis

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Plaintiff] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.    Retaliation Based on First Amendment Rights

Currently remaining in this civil action is Mr. Barksdale's Claim Three alleging that Defendant Connaghan retaliated against him by charging him with COPD and criminal charges because he engaged in conduct protected by the First Amendment, that is, complained about "issues with threats and attempts of violence on his life."  (*See* Doc. # 3 at 7 of 11; *see also*

Doc. # 39 at 19 of 21).  Mr. Barksdale contends that he left the Phoenix Center because he was subjected to threats and attempts of violence and Defendant Connaghan "did nothing to correct the problem."  (*See id.*).  He alleges that Defendant Connaghan's failure "to act upon [his] complaints" "put undue mental and physical stress on the plaintiff rendering him to feel helpless" and giving him "no choice except to leave" the Phoenix Center.  *Id.*  Mr. Barksdale attached to the Complaint a document indicating that Defendant Connaghan made the determination to place him "on escape status" after he failed to return to the Phoenix Center.  (*See* Doc. # 3 at 10 of 11).  Mr. Barksdale also attached to the Complaint a document that he suggests refutes the factual basis for his escape charge and suggests an improper motive by Defendant Connaghan.  (*See* Doc. # 3 at 11 of 11).

Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998) (internal quotation marks and citation omitted).  *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) (noting that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out").  Nevertheless, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity."  *Peterson*, 149 F.3d at 1144.  Retaliation claims in a prison context are viewed with "skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 2006).  "[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role."  *Peterson*, 149 F.3d at 1144.  Therefore, "[a]n inmate claiming retaliation must allege *specific*

8

*facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* at 1144 (internal quotation marks and citation omitted). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.* (internal quotation marks and citation omitted). *See also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) ("[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action.") (citation omitted); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) ("To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.").

Mr. Barksdale alleges that he engaged in protected conduct by complaining of threats and attempts of violence against him. Defendant Connaghan argues that Mr. Barksdale has not established any of the elements of a retaliation claim. First, Mr. Barksdale does not identify what complaints he made to Defendant Connaghan. Nor does he allege or demonstrate the content, date, or time of such complaints. He does not indicate whether he made a single complaint or more than one complaint. Mr. Barksdale does not allege that he reported Defendant Connaghan's failure to take action on his complaints. Mr. Barksdale's vague and general allegation that he was "having issues" with nonspecific "threats and attempts of violence on his life" are not sufficient to place Defendant on notice of a specific threat to his safety. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (holding that vague information or a generalized claim of "having problems" in the jail block were not sufficient to place correctional officers on notice of a specific threat to the plaintiff's safety). *See also Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 35 (3d Cir. 2010) (holding that plaintiff's "failure to protect" claim was properly

dismissed where the plaintiff offered only conclusory allegations that did not present a situation where the plaintiff's health or life were at risk).[1] Mr. Barksdale cannot establish retaliation or refute Defendant's Motion with mere conclusory allegations. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[T]he court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment.") (internal quotation marks and citation omitted); *United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("Conclusory allegations by a non-movant will not suffice" to establish the existence of a triable issue of fact under Fed. R. Civ. P. 56.) (citation omitted). Mr. Barksdale fails to produce any evidence of a chronology of events pointing to Defendant Connaghan's intent to retaliate against him for exercising a constitutional right. Even when viewed in a light most favorable to Mr. Barksdale, his generalizations do not support a claim of retaliation.

"The third element of a retaliation claim is a causal connection between the protected conduct and the adverse action. This element is satisfied where the adverse action was motivated at least in part by the plaintiff's protected conduct." *Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002) (internal quotation marks and citation omitted). Mr. Barksdale's "burden is high." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). He "must establish that his protected conduct was a motivating factor . . . , but that should not end the inquiry." *Babcock*, 102 F.3d at 275. "[T]here is no claim" if Defendants can show that the alleged events would have occurred absent his protected activity. *Babcock*, 102 F.3d at 275.

Mr. Barksdale does not contest that he failed to return to the Phoenix Center on October 17, 2007. As the CDOC Liaison, Defendant Connaghan was notified that Mr. Barksdale failed to return to the Phoenix Center and "made the determination to place [him] on escape status."

---

[1] Copies of unpublished cases cited are attached to this Recommendation.

10

(*See* Doc. # 52-3). The Notice of Charge(s) was prepared on January 27, 2010, more than two years after his escape. (*See* Doc. # 52-1). Following a hearing held on February 2, 2010, Mr. Barksdale was convicted of a COPD violation. (*See* Doc. # 52-7). Mr. Barksdale's COPD conviction was reversed on appeal through the CDOC's administrative process. (See Docs. # 52-8, # 52-9). Mr. Barksdale also pled guilty on February 22, 2010 to a separate charge of attempt to escape in Adams County Criminal Case No. 07CR3334. (*See* Doc. # 52-6). The filing of COPD and criminal charges was so distant in time from Mr. Barksdale's October 17, 2007 escape that he does not establish a causal connection between his alleged protected conduct and the charges. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) ( "a three-month period, standing alone, is insufficient"to establish causation) (citation omitted); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (a plaintiff may establish a causal link between protected expression and an adverse action through evidence that the discharge took place on the heels of protected activity).

Further, in a First Amendment retaliation claim, an inference of retaliatory motive may be undermined by evidence of intervening events. *Deschenie v. Board of Education of Central Consolidated School District No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007) (internal quotation marks and citation omitted). The retaliation inquiry should "be undertaken in light of the general tenor of *Sandin*, which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." *Babcock*, 102 F.3d at 275 (internal quotation marks and citation omitted). "[W]e should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock*, 102 F.3d at 275 (internal quotation marks and citation omitted). The evidence shows that after Mr. Barksdale made his alleged complaints to Defendant Connaghan, he escaped from the Phoenix Center on October 17, 2007 and COPD and criminal charges were brought

11

against him in 2010. A hearing officer convicted Mr. Barksdale of the COPD charge at a disciplinary hearing and the conviction was reversed in an administrative appeal. Mr. Barksdale pled guilty on February 22, 2010 to a separate charge of attempt to escape in Adams County Criminal Case No. 07CR3334. These intervening events broke any causal connection between the alleged protected activity and Defendant Connaghan's conduct. *See Smith v. Denver Public School Board*, 767 F. Supp. 226, 230 (D. Colo. 1991) (impartial administrative law judge's finding of teacher incompetence broke any causal connection of retaliation between board of education and teacher). The court concludes that Mr. Barksdale has not offered sufficient evidence that Defendant Connaghan acted based on any retaliatory motive or that but for a retaliatory motive he would not have been charged with COPD and criminal violations. As Mr. Barksdale fails to meet his threshold burden of demonstrating a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Harrington*, 268 F.3d at 1186 ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.") (citation omitted).

B.   Exhaustion of Administrative Remedies

Defendant Connaghan further argues that Mr. Barksdale failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA") as to the remaining claim. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002). The

"PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*, 549 U.S. 199, 210-212 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Even where the "available" remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Jernigan*, 304 F.3d at 1032 (citing *Booth v. Churner*, 532 U.S. 731, 731-32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level)).

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. *Id.* (citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id. See also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure.") (citation omitted).

The CDOC has a Grievance Procedure available to inmates. (*See* CDOC Administrative

13

Regulation ("AR") No. 850-04).  The court may take judicial notice of the CDOC's administrative process.  *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court may take judicial notice of agency rules and regulations);  *Muniz v. Kaspar*, No. 07-cv-01914-MSK-MJW, 2008 WL 3539270, at * 3 (D. Colo. Aug. 12, 2008) (taking "judicial notice of AR 850-04, the administrative regulation describing the grievance process").  AR 850-04 requires an inmate to file a Step 1 grievance, a Step 2 grievance, and a Step 3 grievance.  (*See* AR 850-04 Section IV. F. 2.).  A Step 1 grievance must be filed no later than thirty calendar days after the date the prisoner knew, or should have known, of the facts giving rise to the grievances.  (*See* AR 850–04 IV. H. 1. a.).  When an offender wishes to proceed to the next step in the process, the offender shall file the next step within five calendar days after receiving a written response to the previous step.  (*See* AR 850-04 Section IV. H. 1. c.).  "In the event the time limit concerning any step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due."  (AR 850–04 IV. H. 1. d.).  A Step 3 grievance is the final step in the grievance process.  The decision of the grievance officer on a Step 3 grievance is the final agency action.  (*See* AR 850–04 IV. G. 1. c. 4)).

Mr. Barksdale filed Grievance No. SF10/11-0155-1 on July 29, 2010, complaining that Defendant Connaghan "failed to provide me with a safe environment."  (*See* Step 1 Grievance, Exhibit J to Defendant's Motion (Doc. # 52-10).  Before receiving a response to his Step 1 grievance, Mr. Barksdale filed his Step 2 grievance on September 2, 2010.  (*See* response to Step 1 Grievance, Exhibit K to Defendant's Motion (Doc. # 52-11);  Step 2 Grievance, Exhibit L to Defendant's Motion (Doc. # 52-12)).  On September 27, 2010, Mr. Barksdale filed his Step 3 grievance.  (*See* Step 3 Grievance, Exhibit M to Defendant's Motion (Doc. # 52-13)).  Two days later, on September 29, 2010, Mr. Barksdale executed the Complaint in this action.  (*See* Doc. # 3 at 9 of 11).

First, exhaustion must occur before the filing of the lawsuit, not while it is pending. *See Porter*, 534 U.S. at 523–25 (federal and state prisoners must first exhaust inmate grievance procedures prior to initiating a lawsuit); *Jernigan*, 304 F.3d at 1032–33 ("[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies"); *Perez v. Hudson*, No. 5:08cv161, 2009 WL 1922574, at * 2 (E.D.Tex. 2009) ("Claims should be dismissed in cases where an inmate filed a lawsuit without waiting for the process to be completed.") (citation omitted). A prisoner does not comply with the exhaustion requirement by exhausting available remedies during the course of litigation. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). Mr. Barksdale commenced this civil action on September 29, 2010, only two days after he filed his Step 3 grievance and before the 45-day time period for CDOC to respond had passed. CDOC's response to Mr. Barksdale's Step 3 Grievance was timely, dated December 2, 2010, approximately two months after Mr. Barksdale filed this civil action. (*See* Response to Step 3 Grievance, Exhibit N to Defendant's Motion (Doc. # 52–14)). Mr. Barksdale must fully exhaust his administrative remedies before filing suit. Submitting a Step 3 grievance without awaiting the institution's response does not constitute exhaustion of administrative remedies.

After *Jones v. Bock*, a failure to exhaust administrative remedies constitutes an affirmative defense which must be pled and proved by defendants. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant Connaghan submits evidence that Mr. Barksdale failed to properly complete the grievance process as to the claim remaining in this lawsuit. As Defendant's Motion is properly supported, the burden shifts to Mr. Barksdale to show, by tendering competent evidence, that summary judgment is not proper. If he fails to demonstrate with specificity the existence of a disputed material fact, the affirmative defense bars his claim, and Defendant is entitled to summary judgment as a matter of law. *Hutchinson v. Pfeil*, 105

15

F.3d 562, 564 (10th Cir. 1997) (citation omitted).

Mr. Barksdale conclusorily argues that "[a]ll remedies were exhausted through administrative and the grievance procedures. All these exhibits have already been presented . . . ." (*See* Response (Doc. # 56) at ¶ 7). Mr. Barksdale's conclusory statement lacks the factual specificity required to create a genuine issue of material fact as to exhaustion. *See Phillips v. Calhoun*, 956 F.2d 949, 951 n. 3 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). Even viewing the evidence in the record in a light most favorable to Mr. Barksdale and drawing all reasonable inferences in his favor, *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009), the court finds that Mr. Barksdale fails to raise a genuine issue of material fact as to whether he fully exhausted administrative remedies, and Defendants meet their burden of demonstrating that he did not. Mr. Barksdale's failure to exhaust his administrative remedies prevents him from pursuing the remaining claim in this federal lawsuit.[2]

C    Lack of Personal Jurisdiction over Defendant Patricia Panek

Mr. Barksdale also names in the Complaint Defendant Patricia Panek, a case manager

---

[2]    The court also notes that under the CDOC's grievance procedures, Step 1 grievances must be filed no later than thirty calendar days after the date the offender knew, or should have known, of the facts giving rise to the grievance. (*See* AR 850–04 IV. H. 1. a.). Mr. Barksdale's Complaint alleges that Defendant Connaghan "failed to provide [him] with a safe environment while at the Phoenix Center" in October of 2007. Because he alleges that he knew of this conduct in October of 2007, Mr. Barksdale was required to file a Step 1 grievance no more than 30 days later. Mr. Barksdale did not file his Step 1 grievance related to this conduct until July 29, 2010, almost three years later. His grievance was untimely given that AR 850–04 IV. H. 1. a. requires the filing of a Step 1 grievance no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance. However, "[i]f a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *overruled on other grounds by Jones*, 549 U.S. 199 (2007) (citation omitted).

at the Phoenix Center. Mr. Barksdale commenced this civil action *in forma pauperis* pursuant to 28 U.S.C. § 1915. (*See* October 13, 2010 "Order Directing Clerk to Commence Civil Action and Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. §1915" (Doc. # 2)). After the December 3, 2010 "Order Granting Service by United States Marshal" (Doc. # 8), a "Waiver of Service of Summons" was filed with the court on December 9, 2010, indicating that Defendant Panek "is an employee of the Avalon Correctional Service, not DOC." (*See* Doc. # 9). The U.S. Marshal attempted to serve Ms. Panek at Avalon Correctional Service. On December 27, 2010, a Process Receipt and Return was filed with the court, indicating that "Ms. Panek no longer works at address, no forwarding information." (*See* Doc. # 13).

While an incarcerated *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the U.S. Marshal for service of the summons and complaint, there is no indication in this case that the U.S. Marshal or the court clerk have failed to perform their duties to serve Defendant Panek. Based upon the information before the court, Defendant Panek cannot be served by the Clerk of the Court or by U.S. Marshal at the addresses on record with the court. Neither the U.S. Marshal nor the Clerk of the Court are required to search for or further attempt to serve Defendant Panek. *Cf. Kiley v. Kurtz*, 533 F. Supp. 465, 467 (D. Colo. 1982) ("[t]he marshals' only duty is to execute service in the requested manner. . . .").

On September 21, 2011, Mr. Barksdale filed a "Motion to Have U.S. Marshal[ ] to Serve . . . Patricia P[a]nek a.k.a. Patricia Rae." As Mr. Barksdale was no longer incarcerated and was residing in Wichita, Kansas, the court denied Mr. Barksdale's Motion and directed him to serve process on Defendant Panek. (*See* Courtroom Minutes/Minute Order (Doc. # 47)). At the Status Conference held on December 6, 2011, the court reminded Mr. Barksdale that no proof of service on Defendant Panek had yet been filed and that it was his responsibility to serve her. (*See* Courtroom Minutes/Minute Order (Doc. # 49)). At the Preliminary Scheduling Conference

17

held on January 10, 2012, the court again reminded Mr. Barksdale that no proof of service on Defendant Panek had yet been filed and that it was his responsibility to serve her. (*See* Courtroom Minutes/Minute Order (Doc. # 50)).

"[S]ervice of process [under Fed. R. Civ. P. 4] provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Hukill v. Oklahoma Native American Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) (internal quotation marks and citation omitted). A court cannot obtain personal jurisdiction over a party without proper service of process. *See Murphy Brothers, Inc., v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (citation omitted); *Oklahoma Radio Associates v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (citations omitted); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case.").

Fed. R. Civ. P. 4(m) provides that the court shall dismiss an action without prejudice as to any defendant who has not been served within 120 days of the filing of the action:

> "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Defendant Panek was named as a Defendant in the Complaint filed on October 13, 2010. More than 775 days has passed since the filing of this civil action and the record before the court

18

indicates that Defendant Panek has not been served. As of the date of this Recommendation, Defendant Panek has not filed with the Clerk of the Court a signed waiver of service or appeared in the case. Sufficient efforts have been made by the Clerk of the Court and the U.S. Marshal and sufficient time has been afforded to Mr. Barksdale to serve Defendant Panek such that she may properly be dismissed for failure to effect service within the time limit of Fed. R. Civ. P. 4(m) and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

Accordingly, IT IS RECOMMENDED that:

1. Defendant Connaghan's Motion for Summary Judgment filed on July 13, 2012 (Doc. # 52) be GRANTED.

2. Summary judgment be granted in favor of Defendant Connaghan and against Plaintiff for failure to demonstrate violation of a constitutional right.

3. Summary judgment be granted in favor of Defendants Connaghan and Panek and against Plaintiff for failure to exhaust administrative remedies.

4. Alternatively, Defendant Panek be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) for failure timely to effect service and pursuant to D. C. COLO. LR 41.1 for failure to prosecute.

5. As no claims remain, the Complaint is properly dismissed in its entirety.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 10th day of December, 2012.

BY THE COURT:

  s/Craig B. Shaffer  
United States Magistrate Judge